William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Jason Wilson (Bar No. 140269)
jwilson@willenken.com
Rebecca T. Green (Bar No. 247690)
rgreen@willenken.com
WILLENKEN WILSON LOH & DELGADO LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Ekwan E. Rhow (Bar No. 174604)
eer@birdmarella.com
Paul S. Chan (Bar No. 183406)
psc@birdmarella.com
Scott L. Goldman (Bar No. 279209)
slg@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LICENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Plaintiff
RICHARD POSTMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD POSTMAN, an individual, | Case No.: 2:14-CV-05516 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1)  COPYRIGHT INFRINGEMENT**<br>**(2)  BREACH OF IMPLIED**<br>**CONTRACT** |
| SPIN MASTER, LTD., a Canadian corporation, SPIN MASTER ENTERTAINMENT, a company of unknown form, MATTHEW WEXLER, an individual, VIACOM, INC., a | **DEMAND FOR JURY TRIAL** |

COMPLAINT

1  Delaware corporation, NICK JR., an
2  entity of unknown form, and
   NICKELODEON, a Delaware
3  corporation,

4                    Defendants.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1    Plaintiff, Richard Postman ("Postman" or "Plaintiff"), by and through his
2    attorneys of record, allege as follows against Spin Master Ltd. ("Spin Master"),
3    Spin Master Entertainment ("SPE"), Matthew Wexler ("Wexler"), Viacom, Inc.
4    ("Viacom"), Nick Jr., and Nickelodeon, Inc. ("Nickelodeon") (collectively
5    "Defendants"):

6                                **INTRODUCTION**

7          1.     This case involves the wrongful misappropriation and use of
8    Plaintiff's copyrighted and creative work: a unique children's cartoon show based
9    on a team of heroic, anthropomorphic dogs with clearly identifiable specialized
10   traits and characteristics, who are led by a tech-savvy human boy.

11         2.     In 2006, and again in 2007, Plaintiff repeatedly pitched his idea for a
12   canine cartoon show to various toy companies and networks including Spin
13   Master, a Canadian toy company.  To communicate his creative idea, he had
14   multiple telephone meetings with executives and creative personnel at Spin Master,
15   and provided them with detailed drawings and scripts of his idea, only to be told in
16   an email that Spin Master was going to "pass."

17         3.     But Spin Master did not pass on his idea; instead, it and the other
18   Defendants secretly embraced it.  In August 2013, Nickelodeon aired the first
19   episode of a cartoon show called PAW Patrol, produced by Spin Master and its
20   subsidiary, SPE.  PAW Patrol features a group of heroic, anthropomorphic dogs
21   led by a tech-savvy human boy.  In some instances, PAW Patrol's dog characters
22   are near mirror images of characters proposed by Plaintiff years earlier.  PAW
23   Patrol quickly became the top-rated television show for preschoolers and has
24   enjoyed tremendous success.

25         4.     Having had his ideas and copyrighted images copied and stolen,
26   Plaintiff has yet to receive any of the fruits of his labor and brings the present
27   lawsuit.

28

133098.1

# THE PARTIES

5.      Postman is an individual residing in Florida.

6.      On information and belief, Defendant Spin Master is a Canadian corporation with its principal place of business in Toronto. Spin Master also has offices in Los Angeles, California.

7.      On information and belief, Defendant SPE is a wholly-owned subsidiary of Spin Master, focusing on the design, development, and production of television and other media properties, including the hit animated preschool series, PAW Patrol.

8.      On information and belief, Defendant Wexler is an individual residing in Toronto, Ontario. Wexler was the co-head of SPE and the key creative executive for PAW Patrol.

9.      On information and belief, Defendant Viacom is a Delaware corporation with its principal place of business in New York City, New York. Viacom is a global entertainment company with operations that include Nickelodeon and Nick Jr, which exploit the animated series PAW Patrol.

10.     On information and belief, Defendant Nick Jr., an entity of unknown form, is a business unit of Viacom Media Networks, a division of Viacom International, Inc, a subsidiary of Viacom.  At present, Nick Jr. exploits the animated series PAW Patrol.

11.     On information and belief, Defendant Nickelodeon, a business unit of Viacom Media Networks, a division of Viacom International, Inc., a subsidiary of Viacom, is a Delaware corporation with its principal place of business in New York City, New York.  At present, Nickelodeon broadcasts the animated series PAW Patrol.

12.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times mentioned in this complaint, SPE has been or is a mere shell, instrumentality, and conduit through which Spin Master has been and is

1   conducting the activities alleged.  Spin Master has been and is directly managing,

2   controlling, and dominating the operations of SPE.  Under the circumstances,

3   adherence to any separate legal existence of Spin Master and SPE would promote

4   injustice.  To avoid an inequitable result, SPE should be regarded as the alter egos

5   of Spin Master.

6        13.    Plaintiff is informed and believes, and on that basis alleges, that at all

7   relevant times mentioned in this complaint, Defendants and each of them, were and

8   are acting in concert and active participation with each other in committing the

9   wrongful acts alleged herein, and were and are the agents of each other and were

10  acting within the scope and authority of that agency and with the knowledge,

11  consent, and approval of one another.

12                    **JURISDICTION AND VENUE**

13       14.    This Court has personal jurisdiction over defendants because each of

14  these defendants have offices in the Central District of California, target customers

15  in the Central District of California, conduct business in the Central District of

16  California, and/or have otherwise worked with companies in the Central District of

17  California.

18       15.    This Court has subject-matter jurisdiction over the Copyright Act

19  claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has jurisdiction

20  over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the

21  state law claims are so related to the federal claims that they form part of the same

22  case or controversy and derive from a common nucleus of operative facts.

23       16.    Venue is proper in the Central District of California under 28 U.S.C.

24  §§ 1391 and 1400 because defendants transact business in the Central District of

25  California and may otherwise be found in this district, and a substantial part of the

26  events giving rise to this litigation, including the injury to Plaintiff, occurred in the

27  Central District of California.

28  //

---

COMPLAINT

3

## GENERAL ALLEGATIONS

Postman Creates the K-9 Heroes.

17.     Plaintiff Richard Postman is a twenty year plus veteran of the children's toy industry.  He has served as both a salesman and sales manager of four toy companies, including two public companies, and has experience with product and package development and design, marketing and merchandising.

18.     Postman was attending a toy show in New York City on September 11, 2001.  In viewing the news coverage of the terrorist attack on the World Trade Center Towers, he took special note of the bomb-sniffing dogs that were working "hand-in-paw" with their human handlers.

19.     Inspired by these heroic animals and his love for dogs in general, Postman began developing a collection of canine cartoon characters that he envisioned being sold as toys.  The end result of his hard work: the K-9 Heroes.

20.     The K-9 Heroes is a group of heroic, anthropomorphic dogs which carry out rescue missions and come to the aid of humans and animals in distress.

21.     The K-9 Heroes team has various members, each with their own unique "profession" and uniform, including: Dash, a fire dog; Justice, a police dog; Doc, an EMS dog; Ice, a mountain search and rescue dog; and Scout, a military dog.  Figure 1 is an ensemble picture of the K-9 Heroes group, created by Postman in the Spring of 2002.

//

//

COMPLAINT
4

133098.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



K-9 Heroes and all related characters & artwork©™ Richard Postman 2001–2002. All rights reserved.

*Figure 1.  The K-9 Heroes.*

22.    The K-9 Heroes are led by a tech-savvy eight-year old human boy, named Josh.  Josh acts as the team's coordinator and dispatcher from the team's high-tech command center.  Figure 2 is a picture of Josh, the human team leader.



*Figure 2.  Josh, the human boy leader of the K-9 Heroes.*

23.    As shown in Figure 3, each of the K-9 Heroes utilizes special gadgets,

including a badge-shaped "Communicator Collar" which allows team members to communicate with Josh.



*Figure 3.  Communicator Collars*

24.     The special gadgets include a "Criminal-Catching Nightstick" used by police-dog Justice capable of shooting out a net capable of snaring people and objects.  Figure 4 is a picture of Justice's nightstick.



*Figure 4.  Justice's Nightstick.*

COMPLAINT
6

25.     Another special gadget created by Postman was the "Action PDA" which allowed anyone to reach the Paw Patrol team.  Figure 5 is a picture of the Action PDA.



*Figure 5.  The Action PDA.*

26.     In November 2001, Postman filed for a logo trademark consisting of the words "K-9 Heroes" incorporated within a badge in International Class 028. The trademark was ultimately registered on July 3, 2007 and given Reg. No. 3259077.  Figure 6 is a figure of the logo trademark:



*Figure 6.  The K-9 Heroes Trademark (badge).*

27.     In July 2002, Postman registered his K-9 Heroes idea with the Copyright Office.  His application for "Collection of Cartoon Characters and Related Properties for K-9 Heroes Cartoon Series" was assigned Reg. No. VAu000557385 on July 4, 2002.

28.     In 2001, Postman left his then-employ to start his own toy company in order to sell K-9 Heroes toys, among other toy ideas.

29.     Through his company, Miracles 4 Fun, Postman began selling K-9 Heroes toys through various outlets, including Walgreens, QVC, and Ames Stores. Figure 7 is a picture of the plush toy version of Dash, the fire dog, taken in 2002.



*Figure 7.  Plush toy of Dash, the fire dog.*

Postman and Spin Master Discuss the Sale of Miracles 4 Fun to Spin Master.

30.     In the Fall 2005, Postman entered into conversations with Anton Rabie, the President and co-CEO of Spin Master, a Canadian toy company, to see whether there might be a potential of working with Miracles 4 Fun, including partnering or even merging with Spin Master or potentially using their distribution channels to sell toys.

31.     In connection with these conversations, Miracles 4 Fun and Spin Master entered into a Confidential Disclosure Agreement in November 2005.

32.     Though the parties had numerous conversations (by e-mail and in person) for several weeks, the parties did not enter into a partnership or any type of formal distribution agreement.

Postman Pitches a K-9 Heroes Cartoon to Spin Master in 2006.

33.     Realizing that the production of K-9 Heroes media (*e.g.,* cartoon show, books, etc.) would bolster the sale of his K-9 Heroes toy line, Postman began pitching his K-9 Heroes cartoon idea to various movie and television production companies, toy manufacturers and publishing companies.

34.     In 2006, Postman met Anton Rabie in New York City.  Postman

1 informed Rabie that he had a cartoon concept and asked Rabie to whom, at Spin

2 Master, he should present the concept.  Rabie informed Postman that he should

3 contact Matt Wexler at Spin Master, who was in charge of Spin Master's global

4 licensing.

5      35.    On August 30, 2006, Postman spoke directly to Wexler about his K-9

6 Heroes concept.  As a follow-up, Postman e-mailed Wexler at 3:50 p.m. that day,

7 copying Rabie on the e-mail.  *See* Exhibit A, which is incorporated herein by

8 reference.

9      36.    Postman's e-mail from August 30, 2006 contained two sample scripts,

10 numerous pictures, background, and sample information regarding K-9 Heroes.

11 Postman presented the K-9 Heroes concept to Spin Master consistent with well-

12 established customs and practices of the entertainment industry and on the

13 mutually understood condition and bilateral expectation that Spin Master and

14 others affiliated with it would not disclose, use and/or exploit the K-9 Heroes

15 concept without Plaintiff's permission and/or without compensating Plaintiff an

16 amount to be agreed on.

17      37.    On September 15, 2006, Postman sent Wexler another e-mail, with a

18 copy to Rabie, with character mockups for the "Poundfia," another set of

19 anthropomorphic dogs intended to serve as the "bad guys" in the K-9 Heroes

20 cartoon show.  *See* Exhibit B, which is incorporated herein by reference.

21      38.    Wexler expressed interest in the K-9 Heroes concept.  Accordingly,

22 the parties continued to exchange e-mails through September 2006 in an attempt to

23 set up a subsequent telephone call.  *See* Exhibit C, which is incorporated herein by

24 reference.

25      39.    On September 30, 2006, Wexler telephoned Postman to tell him Spin

26 Master decided to pass on the K-9 Heroes cartoon show "for now," but that he

27 should check back in about a year.

28

133098.1

1    <u>Postman Pitches K-9 Heroes to Spin Master in 2007.</u>

2        40.    A little over a year later, Postman contacted Wexler to see if Spin

3    Master's interest in K-9 Heroes had increased.  Subsequently, Lyndsay Gun-

4    Munro, whom Postman believed was Wexler's assistant or junior associate, began

5    communicating with Postman regarding K-9 Heroes.

6        41.    On November 2, 2007, Postman spoke with Gun-Munro.  Later that

7    day, Gun-Munro sent Postman an e-mail indicating she had a "concern" his idea

8    was similar to other canine properties that "did okay for a short period of time but

9    did not last on air for very long."  *See* Exhibit D, which is incorporated herein by

10   reference.

11       42.    In the November 2, 2007 e-mail she stated "[y]ou can definitely still

12   send your drawings and information on the show to me.  I'm just not sure that Spin

13   Master will want to take a cartoon dog series out of the many that have come and

14   gone."  *See Id.*

15       43.    Postman responded on November 4, 2007 with a lengthy e-mail

16   explaining the key differences between K-9 Heroes and other dog cartoon

17   properties.  As with this e-mail to Wexler, he attached two sample scripts, pictures

18   and background, and a brief sampling of information about the K-9 Heroes

19   property.  *See Id.*

20       44.    On November 5, 2007, Gun-Munro responded with an e-mail stating

21   "[t]hank you for all this.  I do see the differences now.  I will show Ben…Matty is

22   in LA at the moment for the next week or so.  I'll get back to you as soon as I can."

23   *See Id.*

24       45.    Spin Masters' interest in K-9 Heroes continued.  Subsequently, on

25   November 30, 2007, Gun-Munro informed Postman by e-mail that "[b]oth guys I

26   needed to see this had opposing travel schedules and still do.  I am forwarding it to

27   our licensing guy and I'll wait to hear back from him."  *See* Exhibit E, which is

28   incorporated herein by reference.

46.     On December 3, 2007, Gun-Munro informed Postman that Matt Wexler wanted to set up a time to discuss the K-9 Heroes property on December 6, 2007.  *See* Exhibit F, which is incorporated herein by reference.

47.     On or about December 6, 2007, Postman had a telephone discussion with Wexler, Gun-Munro, and a third person, whom Postman is informed and believes was Ben Varadi, a co-founder and partner in Spin Master.  During the call, Postman discussed in detail the K-9 Heroes cartoon concept.  The Spin Master representatives on the call continued to express interest in the concept.

48.     On December 11, 2007, Postman e-mailed Gun-Munro and asked her to "please advise who was on the phone with us exactly and his contact numbers and title."  Postman received no reply to that request.  *See* Exhibit G, which is incorporated herein by reference.

49.     Thereafter, Spin Master inexplicably went radio silent and, despite repeated attempts to continue the prior conversations, did not communicate with Postman again.

50.     Postman never authorized Spin Master, SPE or any other party to use his creative ideas and copyrighted works.

Spin Master Launches "Paw Patrol" on Nick Jr.

51.     Postman assumed Spin Master had passed on his idea, but, as it turned out, Spin Master was instead secretly developing its own property based on Postman's creative ideas and copyrighted works.

52.     In August 2013, Postman began receiving phone calls from his friends congratulating him on having sold his K-9 Heroes property to Spin Master.  He began conducting research as to what his friends were referring.

53.     On August 12, 2013, Nickelodeon aired the first episode of a cartoon show produced by Spin Master, SPE, and Guru called PAW Patrol.  PAW Patrol was Spin Master's first animated show targeted at a preschool audience.

54.     Like K-9 Heroes, PAW Patrol is a cartoon show about a group of

133098.1

heroic anthropomorphic dogs who undertake rescue missions.  Numerous visual character representations, character attributes, themes and concepts in the PAW Patrol show are direct or near direct copies of those proposed by Postman to Spin Master years earlier.



*Figure 8 – PAW Patrol Team*



*Figure 9 – K-9 Heroes*

55.     For example, like K-9 Heroes, the PAW Patrol has various dog members with different and unique occupations, skills and uniforms, including: Marshall, a fire dog; Chase, a police dog; Zuma, a water-rescue dog; Skye, an aviator dog; Rubble, a construction dog; and Rocky, a recycling dog;

56.     Like Dash, the fire dog in K-9 Heroes, Marshall the fire dog in PAW Patrol, is a black and white spotted Dalmatian clad in a red fire hat, a red and yellow vest, and a red collar.  Like Justice, the police dog in K-9 Heroes, Chase the police dog, is a brown Sheppard, with pointy ears that stand up on either side of his blue police cap, clad in a blue and yellow police uniform with a special collar.

133098.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Figure 10 – Marshall, PAW Patrol*



*Figure 11 – Dash, K-9 Heroes*



*Figure 12 – Chase, PAW Patrol*



*Figure 13 – Justice, K-9 Heroes*

133098.1

57.     Like K-9 Heroes, the PAW Patrol team is led by a tech-savvy ten-year old human boy, named Ryder.  Like K-9 Heroes, Ryder also acts as the team's coordinator and dispatcher from the team's high-tech command center.  Like K-9 Heroes, the high-tech command center is where the dogs meet to receive the new mission.  Like K-9 Heroes, Ryder refers to a monitor in the command center when discussing missions.  Figure 8, above, contains an image of the PAW Patrol team, Ryder, and their high-tech command center.

58.     Like K-9 Heroes, Ryder in PAW Patrol can utilize a "PDA" to communicate with the PAW Patrol team via their collar.  *See* Figures 14 and 15 below.  And like K-9 Heroes, each of the PAW Patrol members utilizes special gadgets, including a "communicator collar," that allows team members to communicate with Ryder or allows the team to be contacted in unison for a new mission.  *See* Figures 16 and 17 below.



*Figure 14 - Using PDA to summon Paw Patrol*



*Figure 15 – The K-9 Action PDA*

133098.1

1
2
3
4
5
6
7
8
9
10



*Figure 16.  The badge-shaped PAW Patrol communicator collars lighting up when Ryder calls.*



*Figure 17.  K-9 communicator collars*

11

12

13      59.     In addition, each of the PAW Patrol members has a "Pup Pack" with

14  gadgets unique to their profession.  Figures 18 and 19 show images of a nightstick-

15  type element extending from Chase's Pup Pack, which – like Postman's K-9

16  Heroes concept (*see* Figure 4) – shoots a net.

17

18

19

20

21  

22

23  *Figures 18 and 19.  Chase shooting a net from his pup pack in Paw Patrol.*

24

25

26

27

28

133098.1



*Figure 4.  Justice's Nightstick in K-9 Heroes.*

60.     Certain aspects of the relationship between the PAW Patrol members are also based upon Postman's K-9 Heroes concepts.  For example, K-9 Heroes had 5 dogs, including one female dog; PAW Patrol has 6 dogs, with one female dog. In K-9 Heroes, the Ice character had a secret crush on the female Doc character; in PAW Patrol, the Chase character has a secret crush on the female Skye character.

61.     Further, each of the K-9 Heroes team members had specific favorite "treats" with which they would be rewarded upon successful completion of a rescue mission.   Similarly, the PAW Patrol team is rewarded with special treats upon successful completion of a rescue mission.

62.     PAW Patrol became an instant hit and soon became television's top-rated preschooler series. On November 14, 2013, Nickelodeon announced PAW Patrol would be renewed for a 26 episode second season.

63.     Starting in May 2013, Spin Master released PAW Patrol toys into the marketplace.  Figure 20 is a picture of a plush toy of Marshall, the fire dog, which very closely resembles Postman's plush toy version of Dash, the K-9 Hero fire dog (Figure 21).

133098.1

1
2
3
4
5
6
7
8
9



10   *Figure 20 – Plush toy of PAW Patrol's*
11            *Marshall*

*Figure 21 - Plush toy of K-9 Heroes Dash, the fire dog*

12

13       64.    Finally, one of the key executives at Spin Master credited with

14   creating and producing the PAW Patrol series is Wexler – the same Spin Master

15   executive to whom Postman had pitched his K-9 Heroes idea years before.  At the

16   time the series first aired, Wexler's online biography touted him as a "key creative

17   and production architect" for the series.  *See* Exhibits H and I, which are

18   incorporated herein by reference, website pages from WexWorks Media, Matt

19   Wexler's new company, and ZoomInfo.  In addition, Wexler's name appears in the

20   credits of various PAW Patrol episodes.  *See* Figure 22.

21   //

22   //

23

24

25

26

27

28

133098.1



*Figure 22.  PAW Patrol Closing Credits.*

65.     After Postman became aware of the PAW Patrol series in 2013, he contacted Spin Master and informed Spin Master that the series and its characters were based upon Postman's K-9 Heroes concepts he had pitched to Wexler and others.  Shortly thereafter, Wexler and/or Spin Master appear to have taken steps to deliberately hide his involvement in the show, by, among other things, deleting the prior references to PAW Patrol from his website and online biography.  *See* Exhibit J, which is incorporated herein by reference, the WexWorks Media landing page as it appears after the redesign.

66.     In fact, an archived Google page suggests that Wex Works Media previously had a "What We've Made" page located at http://www.wexworksmedia.com/what-weve-made which references PAW Patrol as a property that Wexler has made.  *See* Exhibit K, which is incorporated herein by reference.  That page is no longer accessible to the public.  *See* Exhibit L, which is incorporated herein by reference.

67.     Defendants' illegal actions must be stopped.  Plaintiff has been damaged, and continues to be damaged, by Defendants' unauthorized use of the K-

133098.1

1  9 Heroes copyrighted works and creative ideas.

2       68.     Unless these acts are restrained by this Court, they will continue to

3  cause irreparable injury to Postman and to the public for which there is no

4  adequate remedy at law.

5

6                          **<u>FIRST CAUSE OF ACTION</u>**

7                            **<u>(Copyright Infringement)</u>**

8                            **<u>(Against All Defendants)</u>**

9       69.     Plaintiff realleges and incorporates by reference the matters alleged in

10  Paragraph 1 through 68 of this Complaint.

11      70.     Plaintiff registered with the United States Copyright Office the

12  Collection of Cartoon Characters and Related Properties for K-9 Heroes Cartoon

13  Series, bearing the numbers VAu000557385.

14      71.     Plaintiff owns the copyright interests in and to the Collection of

15  Cartoon Characters and Related Properties for K-9 Heroes Cartoon Series, and

16  Plaintiff's copyrights in these works are valid and original.

17      72.     Defendants had access to Plaintiff's Collection of Cartoon Characters

18  and Related Properties for K-9 Heroes Cartoon Series and copied original elements

19  from Plaintiff's copyrighted works to create their PAW Patrol cartoon show.

20  Plaintiff's K-9 Heroes and Defendants' PAW Patrol properties are substantially

21  similar in appearance and expression.

22      73.     On information and belief, Defendant Wexler was an officer of SPE

23  and the moving, active conscious force behind the infringing conduct and derived

24  financial benefit from the infringing conduct.

25      74.     Defendants' aforementioned conduct infringes and will continue to

26  infringe the exclusive rights belonging to the Plaintiff as owner of the copyrights.

27      75.     As no time has Plaintiff authorized Defendants to copy, reproduce,

28  adapt, distribute, or utilize in any way his copyrighted works.

133098.1

76.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff is informed and believes and based thereon alleges, that it has suffered and will continue to suffer injury and damages in an amount to be determined at trial, and that Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff which should be disgorged to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. §§ 504 and 505.  Alternatively, Plaintiff reserves the right to seek statutory damages for Defendants' intentional infringement of his copyrighted works.

77.     Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Plaintiff.  Plaintiff is, therefore, entitled to the maximum statutory damages allowable.

78.     Defendants' infringing conduct has also caused and is causing substantial irreparable injury and damage to Plaintiff in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving the Plaintiff with no adequate remedy at law.

## SECOND CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract)

### (Against Spin Master and SPE)

79.     Plaintiff realleges and incorporates by reference the matters alleged in Paragraph 1 through 78 of this Complaint.

80.     Spin Master and SPE (the "Spin Master Defendants") are liable under California Civil Code Section 1621 for damages to Plaintiff for breach of an implied contract as further alleged below.

81.     Plaintiff presented the K-9 Heroes concept to the Spin Master Defendants in 2006 and 2007 consistent with well-established customs and practices of the entertainment industry and on the mutually understood condition and bilateral expectations that the Spin Master Defendants would not disclose, use,

1  and/or exploit the K-9 Heroes concept and Plaintiff's creative ideas without

2  Plaintiff's permission and/or without compensating Plaintiff in the form of

3  payments, credit, and other consideration to the Plaintiffs.

4        82.    In light of the well-established customs and practices of the

5  entertainment industry and on the mutually understood condition and bilateral

6  expectation that Defendants would not disclose, use and/or exploit the K-9 Heroes

7  concept and Plaintiff's creative ideas without Plaintiff's permission and/or without

8  compensating Plaintiff in the form of payments, credit and other consideration to

9  the Plaintiff, the Spin Masters' Defendants actions and conduct implied and led

10  Plaintiff to reasonably believe Defendants would not disclose, use and/or exploit

11  the K-9 Heroes concept and Plaintiff's creative ideas without Plaintiff's permission

12  and/or without compensating Plaintiff.

13        83.    As set forth above, Plaintiff pitched the K-9 Heroes cartoon show and

14  Plaintiff's creative ideas to Spin Master employees, including Matt Wexler, in

15  2006 and 2007.  By reason of Defendant's voluntary acceptance of Plaintiff's

16  submission and use of Plaintiff's ideas and copyrighted works, the Spin Master

17  Defendants became obligated to attach Plaintiff as producer and compensate and

18  credit Plaintiff accordingly.

19        84.    Notwithstanding the implied contract created between the parties, the

20  Spin Master Defendants wrongfully breached said implied contract by, among

21  other things, disclosing and using Plaintiff's K-9 Heroes concept and Plaintiff's

22  creative ideas in the show PAW Patrol without Plaintiff's permission and/or

23  without compensating Plaintiff in the form of payments, credit and other

24  consideration to Plaintiff.

25        85.    Plaintiff has fully performed all of the terms and conditions required

26  of it by such implied contract except those waived, excused or prevented by the

27  Spin Master Defendants.

28        86.    As a direct and proximate result of the Spin Master Defendants'

1  breach, Plaintiff has suffered substantial and continuing damages, in an amount to
2  be proved at trial.

3  **<u>PRAYER FOR RELIEF</u>**

4  WHEREFORE, Plaintiff prays for relief as follows:

5  1.  Entry of an order and judgment requiring that Defendants and their
6  agents, employees, and representatives, and all other persons, firms or corporations
7  in active concert or participation with Defendants, be enjoined and restrained from
8  using Plaintiff's copyrighted works and creative ideas in K-9 Heroes, including but
9  not limited to manufacturing, selling, distributing, producing, promoting,
10 advertising, offering for sale or otherwise placing into the market the PAW Patrol
11 cartoon show or any PAW Patrol merchandise, including toys or any other
12 substantially similar product infringing Plaintiff's registered copyright.

13 2.  Plaintiffs' compensatory and consequential damages sustained by
14 reason of the acts complained of herein, in the amount to be proven at trial.

15 3.  A judgment ordering Defendants to account to Plaintiff any and all
16 revenues and profits they have derived from their wrongful actions, and a
17 disgorgement of Defendants' wrongful profits and unjust enrichment.

18 4.  In connection with Plaintiff's copyright claims, the right to collected
19 enhanced and statutory damages.

20 5.  A judgment awarding Plaintiff his reasonable attorneys' fees and costs
21 of suit and prejudgment interest; and

22 //
23 //
24
25
26
27
28

133098.1

1        6.     Any other relief that the Court deems just and proper.

2

3                                             Respectfully submitted,

4    Dated:  July 16, 2014         WILLENKEN WILSON LOH &

5                                             DELGADO LLP

6

7                                           By: _/s/ William A. Delgado_

8                                                William A. Delgado
                                            Attorneys for Plaintiff

9                                                RICHARD POSTMAN

10   Dated:  July 16, 2014         BIRD, MARELLA, BOXER, WOLPERT,

11                                            NESSIM, DROOKS, LINCENBERG &

12                                            RHOW PC

13

14                                        By: _/s/ Ekwan Rhow_

15                                               Ekwan Rhow
                                            Attorneys for Plaintiff

16                                               RICHARD POSTMAN

17

18

19

20

21

22

23

24

25

26

27

28

133098.1

1

## <u>**DEMAND FOR JURY TRIAL**</u>

2

Plaintiff hereby demands trial by jury on all issues so triable.

3

4

Dated:  July 16, 2014

WILLENKEN WILSON LOH & DELGADO LLP

5

6

7

By: _*/s/ William A. Delgado*_

William A. Delgado
Attorneys for Plaintiff
RICHARD POSTMAN

8

9

10

Dated:  July 16, 2014

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW PC

11

12

13

By: _*/s/ Ekwan Rhow*_

Ekwan Rhow
Attorneys for Plaintiff
RICHARD POSTMAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

133098.1